RICHARDSON ASSOCIATES and E.W. Allen & Associates, Inc., Appellants (Defendants and Third–Party Plaintiffs),

v.

LINCOLN–DEVORE, INC., a Colorado corporation, Appellee (Defendants and Third–Party Defendants).

No. 88–238.

Supreme Court of Wyoming.

Feb. 11, 1991.

Dennis W. Lancaster of Phillips, Lancaster and Thomas, P.C., Evanston and Craig C. Coburn, Salt Lake City, for appellants.

Richard G. Miller, Casper and Edwin Strand, Colorado Springs, Colo., for appellee.

Before CARDINE, C.J.,* and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

* Chief Justice at time of oral argument.

URBIGKIT, Chief Justice.

Appellants E.W. Allen & Associates, Inc. (Mechanical Engineer) and Richardson Associates (Architect) appeal to this court after the district court dismissed their three complaints against appellee Lincoln–DeVore, Inc. (Soil Lab). Issues tested by this pretrial disposition of the comprehensive defective library building construction litigation include governmental immunity, statute of limitations, discovery, real party in interest, assignment, third-party beneficiary, indemnity, contribution, principal party settlement, plus motions to dismiss from which "summary judgment" was granted and all claims and causes of action dismissed.[1]

Architect was an original defendant and Mechanical Engineer was a third-party plaintiff in a complex civil action resulting from the faulty construction of the Sweetwater County, Wyoming library building which, soon after completion, started sinking into the ground and cracking up to the point of near non-habitability. In the latter stages of the litigation, Architect and Mechanical Engineer filed a Second Amended Complaint (Assigned Claim) "pursuant to an assignment to them from the Library [the original plaintiff] of any and all of the Library's right, title and interest in and to any claim(s) it has or may have against Lincoln–DeVore for [soil testing] services rendered by [Lincoln–DeVore]." The dismissal of that previously non-pleaded Assigned Claim became Architect's and Mechanical Engineer's first issue. This is the Assigned Claim group of causes of action where Architect and Mechanical Engineer sued Soil Lab on a contract breach claim obtained by assignment from Owner after Architect and Mechanical Engineer had settled with Owner for their own contractual liabilities resulting from the defective library building construction.[2]

Architect and Mechanical Engineer had each earlier filed a third-party complaint (First Third–Party Claims) and later an amended third-party complaint (Amended Third–Party Claims) against Soil Lab based on the allegation of the breach by Soil Lab of its contract with the Owner and contention that the breach in faulty workmanship had resulted in damage to Architect and Mechanical Engineer by getting them sued by the Owner. The dismissal of the First Third–Party Claim becomes Architect's and Mechanical Engineer's second issue which was indemnity-contribution in nature. The third group of complaints in the Amended Third–Party Claim alleged litigants to be intended beneficiaries within the contracts for work done separately by Soil Lab for both Owner and Contractor.

We affirm the district court dismissal of all stated causes of action.

## I.  ISSUES

The first issue raised by Architect and Mechanical Engineer is "[w]hether the District Court erred in granting the dismissal of Appellants' Second Amended Complaint [assigned claim] against Appellee."

---

1. The line up of litigants included Sweetwater County Library Board of Trustees (herein described as Library Trustee or Owner); Superior Lumber Company as general contractor (Contractor); Architect; Mechanical Engineer; and Soil Lab. For most of this litigation, Architect and Mechanical Engineer had an antagonistic status, but after Owner settled with Contractor, Architect and Mechanical Engineer, a single law firm assumed unitary representation of these two concerns and this appeal is postured as Architect and Mechanical Engineer as appellants versus Soil Lab as appellee.

   For issue and claim description, we are presented with Owner's previously non-litigated claim, if any, against Soil Lab and then assigned as a breach of contract right to Architect and Mechanical Engineer (Assigned Claim); the original third-party claims founded on indemnity and contribution (First Third–Party Claims); and the 1988 amendment to then introduce the third-party beneficiary contentions (Amended Third–Party Claims).

2. In the litigative history prior to the partial settlement and consequent assignment, Owner had rejected the notion of fault of Soil Lab as a cause of the building damage. That contention had been made by Architect and Mechanical Engineer as their affirmative defense to the charges of their contractual default. What had been for Architect and Mechanical Engineer a pleaded defense after settlement was turned into an assigned claim. As we will hereafter relate, it came too late to escape a statute of limitations preclusion.

The particular arguments advanced in support of this issue are:

I. The assignment of claims executed between the Library Board and Appellants is valid under Wyoming law and Appellants have properly asserted in the Second Amendment Complaint the claims of the Library Board pursuant to a lawful assignment from the Library Board to Appellants.

II. The Library Board's power to assign is not limited under Wyoming Statute § 18–7–104 (1977 as amended).

III. Appellants have properly designated the parties which can be named as Plaintiffs in the Second Amended Complaint, in compliance with the express language of Rule 25 of the Wyoming Rules of Civil Procedure, and therefore the Second Amended Complaint has been properly filed in accordance with the Wyoming Rules of Civil Procedure.

IV. Appellee's arguments challenging the validity of the service of process on Appellee and the inability of Appellants to assert their claims presented in the Second Amended Complaint, are groundless and do not support the dismissal order of the District Court.

V. The Statute of Limitations is not a bar to this action as the Library Board is a governmental entity and therefore not subject to the defense of statutes of limitations.

VI. Even if the Library Board is subject to the statute of limitations claim, the relevant limitation period has not yet expired.

We resolve all of these arguments on a statute of limitations application.

The second issue raised by Architect and Mechanical Engineer is "[w]hether the District Court erred in granting the dismissal of Appellants' Amended Third–Party Complaint against Appellee [contribution-indemnity and third-party beneficiary actions]."

The particular arguments advanced in support of this issue are:

I. Appellants' Amendment to their Amended Third–Party Complaint, although not filed in strict compliance with Rule 15(a) of the Wyoming Rules of Civil Procedure, should not be barred as it is a well-established view that permission to amend should be freely granted and amendments are favored under the law [third party beneficiary claim].

II. The Settlement Agreement entered into and subsequent Order of Dismissal, expressly dismissing all of the litigants' claims except for those claims pending against Appellee, including: (1) Appellants' third-party complaints and claims against Appellee, and (2) The claims assigned to Appellants by the Library Board against Lincoln–DeVore in no way resulted in the deprivation and extinction of Appellants' claims asserted in Appellants' Amended Third–Party Complaint.

III. Appellants are entitled to recover contribution and/or indemnity under applicable Wyoming statutory law or pursuant to common law principles, and furthermore the acceptance of the assignment of claims assigned by the Library Board to Appellants, did not result in Appellants surrendering any direct claims or causes of action that they personally had or may have directly against Appellee [contribution-indemnity issue].

The claims were resolved by the dispositive district court orders from which the present appeal is taken:

1. Strict indemnity—Architect's claim against Soil Lab.

2. Strict indemnity—Mechanical Engineer's claim against Soil Lab.

3. Contribution—Architect's claim against Soil Lab.

4. Contribution—Mechanical Engineer's claim against Soil Lab.

5. Implied indemnity—Architect's claim against Soil Lab.

6. Implied indemnity—Mechanical Engineer's claim against Soil Lab.

7. Third-party beneficiary—Architect's claim against Soil Lab.

(a) based on work done for Owner; and

(b) based on work done for Contractor.

8. Third-party beneficiary—Mechanical Engineer's claim against Soil Lab.

(a) based on work done for Owner; and

(b) based on work done for Contractor.

9. Claim founded on the contractual relationship between Owner and Soil Lab with contended failure of performance, which claim was then assigned to Architect and Mechanical Engineer as part of the settlement by Contractor, Owner, Architect and Mechanical Engineer. This claim, as phrased, is not the amount paid in settlement to Owner since totalled in terms of the maximum damage for which the Library Trustees might have secured recovery if all of its claims had been paid instead of the discounted settlement.

The answers to the questions of "who became the real party in interest" and "did a statute of limitations run" are dispositive of Architect's and Mechanical Engineer's assigned claim. The answers to the questions regarding the application of third-party beneficiary and indemnity or contribution within the facts presented are dispositive of Architect's and Mechanical Engineer's first and amended third-party claims.

## II. FACTUAL AND PLEADING BACKGROUND

Library Trustees contracted with Soil Lab[3] to investigate the soil for a site upon which the Library Trustees planned to build a library. Owner later contracted with Architect[4] to provide architectural and construction administration services and Contractor[5] to construct the facility. Architect contracted with Mechanical Engineer to perform design and planning services as its subcontractor.

The library site had once been a cemetery which had been moved, for the most part, in the 1920's. During construction, the workers uncovered eight or nine unmoved graves. No sooner had the library been completed than the Library Trustees found the building haunted with structural problems. First, the front of the library began to crack. After repairs were completed, the bricks along the front wall began pulling away from roof beams. The library began to sink into the ground and disintegrate to the point of non-habitability.[6] Owner filed suit against Architect and Contractor in 1985.

Creation of complex pleadings centralized the litigation activities in which Contractor counterclaimed against Owner; Architect cross-claimed against Contractor; Owner amended the original complaint to also sue Mechanical Engineer; Mechanical Engineer counterclaimed against Owner, cross-claimed against Contractor and third-party complained against Soil Lab; Architect filed a third-party complaint against Soil Lab, cross-claimed against Contractor, and joined TransAmerica Insurance Company as a cross-claim defendant; Soil Lab counterclaimed against Mechanical Engineer and Architect; Architect cross-claimed against Mechanical Engineer; Mechanical Engineer cross-claimed against Architect; Architect amended its third-party complaint against Soil Lab; Mechanical Engineer amended its third-party complaint against Soil Lab; and Architect and Mechanical Engineer joined to file a second amended complaint against Soil Lab by arguing they acquired the right because it had been assigned by Library Trustees to them; and Soil Lab cross-claimed against Owner and cross-claimed against Contractor.

Linking these claims, amended claims, counterclaims, cross-claims and third-party claims were motions to dismiss and motions for summary judgment. Contractor moved to dismiss the cross-claim of Architect; Architect moved to dismiss Owner's suit; Mechanical Engineer moved to dismiss the cross-claim brought by Contractor; Contractor moved to dismiss the cross-claim of Mechanical Engineer; TransAmerica Insur-

---

**3.** A soil testing lab based in Colorado.

**4.** Richardson Associates is a professional architectural corporation based in Salt Lake City, Utah.

**5.** A Wyoming corporation based in Rock Springs, Wyoming.

**6.** A site condition is not necessarily a defect. It may create a defect if adequate design precautions are not taken to compensate. *See Chu v. Canadian Indem. Co.,* 224 Cal.App.3d 86, 274 Cal.Rptr. 20 (1990).

ance Company moved to dismiss the cross-claim by Architect; Mechanical Engineer moved for summary judgment of the fourth claim for relief made by Owner which alleged Owner was an intended third-party beneficiary of the contract between Architect and Mechanical Engineer; Soil Lab moved to dismiss the second amended complaint by Architect and Mechanical Engineer; and Contractor moved to dismiss or have summary judgment upon Soil Lab's cross-claim. By stipulation, the district court judge dismissed with prejudice Owner's complaint against Architect, Contractor and Mechanical Engineer; dismissed with prejudice the counterclaims by Architect, Contractor and Mechanical Engineer against Owner; and dismissed with prejudice the cross-claims between Architect, Contractor and Mechanical Engineer. From there, Architect and Mechanical Engineer moved to dismiss or have summary judgment adverse to Soil Lab's cross-claim against Owner. Finally, Soil Lab moved to dismiss the amended third-party complaint against it by Architect and Mechanical Engineer.

The dismissal of the assigned claim filed by Architect and Mechanical Engineer against Soil Lab and the dismissal of the first and amended third-party claims by Architect and Mechanical Engineer against Soil Lab form the basis of the appeal by Architect and Mechanical Engineer. An appeal was filed and then not pursued by Soil Lab from dismissal of its defensive cross-claims which turned into third-party complaints against Owner and Contractor.

The first pleadings to involve Soil Lab were third-party complaints initiated by Architect and Mechanical Engineer by assertions that Soil Lab, in contracting with Owner and/or Contractor, assumed certain obligations for performance which required "due skill and care." It was then alleged that the contracting duty was breached in various respects—Architect, having relied on the accuracy of the work, stands entitled to contribution and/or indemnity for amounts proportional to Owner's damage caused by Soil Lab. An additional claim was stated for "implied indemnity" by contention that Architect's liability was solely caused by the negligence of Soil Lab. Next stated was a "comparative indemnity" claim that as a result of the negligence of Soil Lab, Architect had been damaged [in liability to Owner?] for which amount recovery was prayed. Mechanical Engineer's third-party claim was essentially the same as Architect's except it did not include the comparative indemnity.

After the settlement among Owner, Contractor, Architect and Mechanical Engineer, the litigation becomes more attenuated and activated as partly based on the assignment and covenant not to sue settlement documents. Architect and Mechanical Engineer, now first joined by representation of one law firm and no longer standing as litigative contestants, filed a motion for leave to file an amended complaint in the name of the Owner to state a claim against Soil Lab. By now, it has been more than ten years after the contractual services were performed. Authority to amend was granted in March 1988, about two and one-half years after the original complaint was filed. The major thrust of the new litigation propelled the assigned claim as an amendment to the complaint originally filed by Owner against Contractor and Architect, and introduced for its purposes both a new claim and a new defendant derived from the contractual relationship between Owner and Soil Lab claiming contractual damages in variant improper workmanship aspects and charging improper advice by Soil Lab to both Owner and Contractor.

Then Architect and Mechanical Engineer, without leave of the district court, filed a new claim within their original third-party complaint alleging third-party beneficiary liability of Soil Lab to Architect and Mechanical Engineer as a direct right proceeding. We then have the theory of third-party beneficiary added to the litigation (provided by unapproved and untimely amendment). The pleading presents two claims: one relating to work done by Soil Lab for Owner before construction started and one relating to later work done for Contractor during construction.

Responding to the 1988 barrage, Soil Lab answered Architect, Mechanical Engineer, and Owner assigned claim by a W.R.C.P. 12(b)(6) motion to dismiss attacking the assignment and asserting a defense of statute of limitations. It similarly answered the amended third-party claims by denial and affirmative defense of the statute of limitations and failure to state a claim.[7]

Complexities do not end here since the initial response of Soil Lab to the third-party complaint which was filed in 1987 stated a general denial, seven affirmative defenses, and a counterclaim. What that meant—when the initial pleading was amended a year later without approval of the district court by addition of a separate claim and not by restatement with the pleading then followed by an answer which did not procedurally challenge the amendment—is not particularly clarified by the record. A month or so after filing the answer, the procedural challenge to the amendment based on the lack of district court approval followed.

Architect and Mechanical Engineer then proceeded as injured parties to claim damages by virtue of obligations they incurred to Owner for which repayment they were asserting was based on strict indemnity, implied indemnity contribution and third-party beneficiary. They also asserted a claim, not for whatever their damages may have been or losses sustained, but rather for rights which they had acquired by assignment from Owner as Owner's potential contractual causes of action against Soil Lab. In accord with the second theory, the claim for recovery by Architect and Mechanical Engineer was not what had been paid to settle—$350,000 of which apparently most, but not all, had been paid by them—but the original total claim by Owner of approximately $494,000 which had been compromised in settlement to the $350,000 total.

In summary, we have Architect and its agent asserting claims against Soil Lab arising from the 1977 report which was ordered and used by Library Trustees. The claims are grounded in "indemnity and contribution," "third-party beneficiary," and "assignment." All of this continues after the Library Trustees settled with the general Contractor, Architect and Mechanical Engineer by a "release," assignment and covenant not to execute.[8] The district court granted dismissal with prejudice to every claim following recitation in a simple decision letter, which stated:

Gentlemen:

I have examined the file and read your briefs in support of your motions for summary judgment and motion to dismiss.

I am inclined to agree with all of you for the reasons set forth in your respective briefs, and see no need for a protracted discussion.

Accordingly, your motions are all granted. Counsel will please prepare the necessary documents, send copies to opposing counsel and the originals to me for signature.

By The Court,

/s/* * *

District Judge

## III. ASSIGNED CLAIMS—SECOND AMENDED COMPLAINT

This new proceeding, by assignment from Owner, was introduced into the litigation after Architect and Mechanical Engineer settled with everyone except Soil Lab by amendment then to pursue whatever claim Owner might have presented, but never did, against Soil Lab. Disposition of this issue requires that we address the real party in interest and if the statute of limitations forecloses proceedings on the assigned claim. Questioned is the effect of the Library Trustees' assignment of their

---

7. To add amazement to the complexity, Architect and Mechanical Engineer, by its own attorneys but *in the name of Owner,* filed a motion under W.R.C.P. 12(b)(6) or, alternatively, for summary judgment to dismiss Soil Lab's cross-claim against Owner, which motion was based

on the assertion of the claim assignment from Owner to Architect and Mechanical Engineer.

8. By virtue of the nature of this proceeding, the entire text of the covenant and the assignment is attached to this opinion as appendices.

potential claim to Architect and Mechanical Engineer as the basis for allowance of the further proceeding involving that newly introduced subject into the pending lawsuit.

A. Real Party in Interest

■ Architect and Mechanical Engineer, first by leave to amend and then by filed amendment in the name of the Library Trustees, offered the assigned claim amendment against Soil Lab on the basis of their acquisition of the interest of Owner which was postured in the lawsuit to be a continued proceeding in the name of the Library Trustees under the control of the assignees. The difficulty with Architect's and Mechanical Engineer's thesis is application of case law involving an ongoing lawsuit to be transferred to what is essentially a completely new proceeding which involves a party who was not in the original lawsuit. Furthermore, we need not comprehensively review the interrelationship between W.R.C.P. 17 and 25, since the only substance presented here for our decision in the real party in interest question is whether the present litigants are the Library Trustees or Architect and Mechanical Engineer, who are private parties, *to determine whether a statute of limitations defense is available.* It does not matter whether this new litigation could have been pursued in a separate lawsuit or by actual interjection of the claim through the amendment in the remaining lawsuit which was underway between themselves and Soil Lab. The issue is preclusion by expiration of some statute of limitation. Annotation, *Change in Party After Statute of Limitations Has Run,* 8 A.L.R.2d 6 (1949).

First inquiry is the existence of a real party in interest status in order to institute a lawsuit. *Wyoming Wool Marketing Ass'n v. Urruty,* 394 P.2d 905 (Wyo.1964); *Gardner v. Walker,* 373 P.2d 598 (Wyo. 1962); *Weber v. City of Cheyenne,* 55 Wyo. 202, 97 P.2d 667 (1940). This argument relates to the next contention that no applicable statute of limitations could run against the assignor because of governmental immunity preclusion from which status the assignees would be similarly benefited. First to be addressed is who then is the real party in interest—the Library Trustees or the assignees, Architect and Mechanical Engineer.

The definition of real party in interest is derived from *Weber,* 97 P.2d at 669 (quoting 47 C.J. 35 and 1 Sutherland's Code Pleading, Practice and Forms, Section 12, Page 11):

"A 'real party in interest' is one who has an actual and substantial interest in the subject matter, as distinguished from one who has only a nominal interest, having reference not merely to the name in which the action was brought, but to the facts as they appear of record. He must be the present owner of the right sought to be enforced, even though his ownership is of the nature of a special property or equitable interest in the subject matter of the suit." * * * "Whatever may be the rule under the old system, the 'real party in interest' is the party who would be benefited or injured by the judgment or the 'party entitled to the avails of the suit.' 'Interest,' within the meaning of this rule, means material interest, an interest in issue and to be affected by the decree, as distinguished from mere interest in the question involved, or mere incidental interest."

*See likewise Rothwell v. Knight,* 37 Wyo. 11, 258 P. 576 (1927) and *McDonald v. Mulkey,* 32 Wyo. 144, 231 P. 662 (1924). See also the similar issue of "standing to sue" which is a character of real party in interest in *Matter of Various Water Rights in Lake DeSmet Reservoir, Bd. of Control, Docket No. II 77 2 1,* 623 P.2d 764 (Wyo.1981).

In *Central Contractors Co., Inc. v. Paradise Valley Utility Co.,* 634 P.2d 346, 348 (Wyo.1981), where it was held that a parallel company affiliated in interest could not be the real party in interest when it was not a party to the contract, we said:

"A pleading which sets forth a claim for relief * * * shall contain (1) a short and plain statement of the claim *showing that the pleader is entitled to relief* * * *."* (Emphasis added.) Rule 8(a), W.R.C.P.

"Every action shall be prosecuted in the name of the real party in interest. * * *." Rule 17(a), W.R.C.P.

*Erb v. Erb*, 573 P.2d 849 (Wyo.1978) and *Greenough v. Prairie Dog Ranch, Inc.*, 531 P.2d 499 (Wyo.1975) are not applicable because both involve amendments during the course of the litigation and, in each case, the assignor or transferor retained a tangible interest in the results. Here, an entirely new claim against a new defendant was introduced into Owner's original lawsuit.

The real party in interest in this litigation is Architect and Mechanical Engineer by virtue of the assignment of the complete cause of action from Owner upon which they instituted and are now pursuing litigation.[9] *Wyoming Wool Marketing Ass'n*, 394 P.2d 905.

### B. Statute of Limitations

Passing from the real party in interest inquiry, Architect and Mechanical Engineer argue the umbrella of immunity from a statute of limitations, which may be provided to a governmental entity, carries forward to their clients with the assignment and provides a barrier denying utilization by Soil Lab. Architect and Mechanical Engineer come armed with more enthusiasm than authority.[10]

It is the soil testing on site work done by Soil Lab on May 17 and 18, 1977, as incorporated into a report dated and furnished about June 9, 1977, upon which the statute of limitations is premised.[11] The benefit from this statute of limitations must be the result of the nature of the party; e.g., governmental immunity, and not the character of the claim. Next determined by overwhelming case law is that governmental immunity[12] preclusion from a defense of statute of limitations requires public interest in the results and not pro forma participation in the proceedings. *Board of Ed., School Dist. 16, Artesia, Eddy County v. Standhardt*, 80 N.M. 543, 458 P.2d 795, 802 (1969). No matter whether the immune government is a party, the insulation arises only if the real interest is governmental and not by a benefit for private individuals. This fundamental rule was first defined in *United States v. Beebe*, 127 U.S. 338, 344–46, 8 S.Ct. 1083, 1086, 32 L.Ed. 121 (1888) (quoting *State of New Hampshire v. State of Louisiana*, 108 U.S. 76, 80, 2 S.Ct. 176, 176, 27 L.Ed. 656 (1883) and *Miller v. State*, 38 Ala. 600 (1863)):

**9.** Originally, Soil Lab filed cross-appeals challenging dismissal of its counterclaims against Owner and Contractor. The cross-appeal was subsequently withdrawn so that at this stage, judgments of dismissal of the Library Trustees and Owner are final and they no longer continue as party litigants in this proceeding.

**10.** The one case cited and included, which quotes from two United States Supreme Court decisions, provides no guidance in that direction. The case, *United States v. Taylor*, 144 F.Supp. 15 (E.D.Pa.1956) and its references to language from *United States v. Nashville C & St L Ry. Co.*, 118 U.S. 120, 6 S.Ct. 1006, 30 L.Ed. 81 (1886) and *United States v. Buford*, 28 U.S. (3 Pet.) 12, 7 L.Ed. 585 (1830), fails totally to address the subject with which we are attended. Differing from the factual issue we are presented, *Taylor* determined that, if the appropriate statute of limitations had expired before assignment *to the government*, it would not thereafter achieve an immunity by virtue of the claim being vested in the government. Assignment of an invalid claim to the government did not recreate validity. Likewise, in derivative status, the assignee receives the claim with the impedance of statute of limitations burden previously faced by the assignor. *Seven Sixty Travel, Inc. v. American Motorists Ins. Co.*, 98 Misc.2d 509, 414 N.Y.S.2d 254 (1979). In that case, the difference between indemnity and subrogation or assignment was recognized, in effect, on expiration of the statute of limitations. *See also Aetna Cas. & Sur. Co. v. Windsor*, 353 A.2d 684 (D.C.App.1976).

**11.** Although Soil Lab did work for Contractor during the course of construction, no work is claimed to have been furnished to Owner subsequent to the filed report of June 9, 1977. Errors, mistakes and insufficiencies in the original report are the basic premise of this litigation since Mechanical Engineer and Architect now claim they relied on that erroneous data in their own planning and design.

**12.** We do not consider the issue in this decision to be whether units of government, other than the state itself, enjoy a statute of limitations preclusion. That subject will be left for other cases in both statutory and common law analysis.

The question is [a]re these defences available to the defendant in a case where the Government, although a nominal complainant party, has no real interest in the litigation, but has allowed its name to be used therein for the sole benefit of a private person?

It has been not unusual for this court, for the purposes of justice, to determine the real parties to a suit by reference, not merely to the names in which it is brought, but to the facts of the case as they appear on the record. * * * "And while the suits are in the names of the States, they are under the actual control of individual citizens, and are prosecuted and carried on altogether by and for them." * * *

\* \* \* \* \* \*

* * * "In our opinion, the rule that the statute of limitations does not run against the State, has no application to a case like the present, when the State, though a nominal party on the record, has no real interest in the litigation, but its name is used as a means of enforcing the rights of a third party who alone will enjoy the benefits of recovery.

In *United States v. American Bell Tel. Co.*, 167 U.S. 224, 265, 17 S.Ct. 809, 820, 42 L.Ed. 144 (1897) (quoting *Beebe*, 127 U.S. at 347, 8 S.Ct. at 1088) it is stated:

"We are of the opinion that when the Government is a mere formal complainant in a suit, not for the purpose of asserting any public right or protecting any public interest, title or property, but merely to form a conduit through which one private person can conduct litigation against another private person, a court of equity will not be restrained from administering the equities existing between the real parties by any exemption of the Government designed for the protection of the rights of the United States alone. The mere use of its name in a suit for the benefit of a private suitor cannot extend its immunity as a sovereign government to said private suitor * * *."

*See LaRepublique Francaise v. Saratoga Vichy Spring Co.*, 191 U.S. 427, 24 S.Ct.

145, 48 L.Ed. 247 (1903). *See also Patten v. Scott*, 118 Pa. 115, 12 A. 292 (1888), which involves adverse possession of property for which a very delayed patent was issued. The statute of limitations was not delayed while technical title remained in the commonwealth. The assignee in this case takes the claim with the same time limitations to file suit with which the assignor would have been faced if no assignment was made. *Aetna Cas. & Sur. Co. v. Windsor*, 353 A.2d 684 (D.C.App.1976); *Seven Sixty Travel, Inc. v. American Motorists Ins. Co.*, 98 Misc.2d 509, 414 N.Y. S.2d 254 (1979).

We also reject Architect's and Mechanical Engineer's claim that the complaint filed against Soil Lab would relate back to the date of the filing of the original complaint. An amendment to a complaint will not relate back to the original complaint if a new claim is stated. *Turner v. Hamilton*, 13 Wyo. 408, 80 P. 664 (1905); *N. & G. Taylor Co. v. Anderson*, 275 U.S. 431, 48 S.Ct. 144, 72 L.Ed. 354 (1928); *McDaniel v. Lovelace*, 439 S.W.2d 906 (Mo. 1969); Annotation, *supra*, 8 A.L.R.2d 6. In this case, Library Trustees themselves did not sue Soil Lab so the assigned claim was a new claim by the assignee to litigate with a new party. *National Fire Ins. Co. v. Pettit–Galloway Co.*, 157 Ark. 333, 248 S.W. 262 (1923). By virtue of a party being added by amendment, the complaint cannot relate back. Additionally, an entirely new claim was presented involving a completely different contract. The Library Trustees, until partial settlement and assignment by Owner, had never accepted fault of Soil Lab as a claim for recovery from anyone. *Union Pac. R. Co. v. Wyler*, 158 U.S. 285, 15 S.Ct. 877, 39 L.Ed. 983 (1895); 51 Am. Jur.2d *Limitation of Actions* § 218 (1970). *Cf. Cooper v. Thomas*, 456 So.2d 280 (Ala. 1984). The assigned claim became a direct breach of contract action pleaded in the new complaint filed by an assignee of the original bargaining party. The assignee was the real party in interest. Governmental immunity from a statute of limitations claim preclusion is not a viable defense for maintenance of this lawsuit when instituted

more than ten years after the work was done.

### C. Discovery—Tolled Statute of Limitations

Architect and Mechanical Engineer then argue that, even if Owner's assignee is subject to the statute of limitations, the relevant limitation period has not expired:

Nevertheless, even if somehow the District Court did so find that: The second amended complaint did not relate back to the filing of the original complaint; that Appellants were not entitled to assert governmental immunity on behalf of the Library Board; that Appellants are the real parties in interest; that a substitution is a necessary requirement for the pursuit of the second amended complaint; that Appellants must now assert the Library Board's claims as private professionals subject to Wyoming Statute § 1–3–107(a)(i), Appellants are still entitled to assert the Library Board's claims against Appellee based on the principle of discovery as authorized under Wyoming Statute § 1–3–107(a)(i)(A) set forth above.

As expressed in Appellants' Memorandum in opposition to the motion to dismiss, * * *, the application of the discovery rule can justifiably be asserted in the instant case. Based upon reliable information given to Appellants by the Library Board, it was not until well into the discovery phases of this litigation, particularly in the process of taking the depositions of representatives of Chen & Associates and Banner & Associates in the Spring of 1988, that the Library Board realized that Appellee had not performed its contract in a professional manner and in accordance with their contractual agreement, and that such acts and omissions could have been the reasons for the problems that the Library was experiencing. * * * Therefore any claims against Appellee would logically be based upon the discovery rule and would be well within the two-year statutory limitation period of Wyoming Statute § 1–3–107(a)(i) (1977 as amended), if applicable.

This contention is confusing because the basic thrust of the statute of limitations defense is emplaced in W.S. 1–3–105 relating to civil actions on a contract.[13] Whether the professional malpractice statute, W.S. 1–3–107, applies to Soil Lab will not be determined in this opinion, but suffice it to say that the premise of professional malpractice is usually based in tort.[14] *Vas-*

---

13. (a) Civil actions other than for the recovery of real property can only be brought within the following periods after the cause of action accrues:
(i) Within ten (10) years, an action upon a specialty or any contract, agreement or promise in writing;
(ii) Within eight (8) years, an action:
(A) Upon a contract not in writing, either express or implied; or
(B) Upon a liability created by statute other than a forfeiture or penalty[.]
W.S. 1–3–105.

14. (a) A cause of action arising from an act, error or omission in the rendering of licensed or certified professional or health care services shall be brought within the greater of the following times:
(i) Within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after discovery of the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:
(A) Not reasonably discoverable within a two (2) year period; or
(B) The claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence.
(ii) For injury to the rights of a minor, by his eighth birthday or within two (2) years of the date of the alleged act, error or omission, whichever period is greater, except that a cause of action may be instituted not more than two (2) years after discovery of the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:
(A) Not reasonably discoverable within the two year period; or
(B) That the claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence.
(iii) For injury to the rights of a plaintiff suffering from a legal disability other than minority, within one (1) year of the removal of the disability;
(iv) If under paragraph (i) or (ii) of this subsection, the alleged act, error or omission is discovered during the second year of the two (2) year period from the date of the act,

*sos v. Roussalis,* 625 P.2d 768 (1981), *after remand* 658 P.2d 1284 (Wyo.1983).

There are few facts fixed, admitted or established in this record, but it is uncontested that Soil Lab did two days of soil testing in May 1977 and submitted a written report dated June 9, 1977 after being asked to do so by a member of the Library Trustees. That is the only work done against which the claim of contractual breach in its agreement with Owner can now be made.[15]

We have the contention that discovery, first occurring during litigative preparation, is an exception to the statute of limitations and extends the time for the commencement of suit by assignee beyond the more than ten years that elapsed between the 1977 time of performance and the amended claim filing in 1988 alleging the claim for contractual breach. There are three separate statutes which deserve comment regarding a statute of limitations

evaluation for the more than ten year time span in this case.

The contractual action statute is W.S. 1–3–105(a)(i) and (ii). Additionally referenced in briefing is the error or omission in rendering professional or health care services limitation, W.S. 1–3–107. Wyoming also has a statute, which was enacted by Wyo.Sess.Laws ch. 166 (1981), that provides a ten year statute of limitations—statute of repose—relative to improvements to real property. That statute is triggered upon completion of construction. *Roberts v. Richard & Sons, Inc.,* 113 N.H. 154, 304 A.2d 364 (1973). Any questions raised would not be considered to apply here with the certificate of completion for the library building issued in 1980–81.[16]

This court is faced with the further contention that a discovery factor should be applied to the contractual limitation statute, W.S. 1–3–105(a), to provide tolling of the statute until discovery which would

error or omission, the period for commencing a lawsuit shall be extended by six (6) months.

(b) This section applies to all persons regardless of minority or other legal disability. W.S. 1–3–107.

Clearly on this record, the "discovery" occurred substantially earlier than two years before April 4, 1988. Major problems with the building had developed soon after completion and all kinds of evaluations, tests and activities had been pursued which then came to involve Architect and Mechanical Engineer in 1984 and 1985.

15. During construction, Soil Lab did testing to determine the appropriateness of the site compacting. The scope of the activity is not established, but there appears to have been fifteen compaction tests for which reports were submitted by Soil Lab to Contractor. That activity cannot be the subject of a claim by assignment from Library Trustees. Later, post-construction problem discovery work was done for the Library Trustees in about 1984 for analysis of the building defects, but that report is also not in the record and again not within the litigation parameters of the contractual claim presented here. This case now presented involves two days of work done by Soil Lab by oral order and the resulting testing report of June 9, 1977, which was provided to Owner and sometime thereafter furnished by Owner to Architect at or after an architectural contract was entered into for building and design. Architect then furnished a copy of Soil Lab's report to its subcontractor, Mechanical Engineer.

16. We will express no opinion whether the two year professional or health care statute could be applied dependent upon the license or certified status of the person performing the services for Soil Lab, W.S. 1–3–107, since this record neither considered that issue nor are there facts available upon which an appropriate decision can be made. *See however Jilek v. Berger Elec., Inc.,* 441 N.W.2d 660 (N.D.1989) and Comment, *Limitation of Actions—Negligence: North Dakota Malpractice Statute of Limitation is Limited in Scope,* 66 N.D.L.Rev. 309 (1990). Consequently, the statute involved is W.S. 1–3–105 [ (a), either (i) or (ii) ]. We will not determine whether this is an oral or written agreement case either since the record is essentially not available to make that decision and the subject was neither briefed by the litigants nor considered by the district court. In any event, a period of more than ten years has elapsed since the 1977 contracting date and performance time before the amended complaint was filed on April 4, 1988. It is axiomatic that Architect and Mechanical Engineer have the duty to furnish a record containing sufficient information for this appellate court to determine questions on appeal. *Mountain Fuel Supply Co. v. Emerson,* 578 P.2d 1351 (Wyo.1978); *Eagleburger v. Emerson Elec. Co.,* 794 S.W.2d 210 (Mo.App.1990). Extensive discovery, which was obviously pursued in pretrial development, is not a part of the record. *See* Uniform Rules for the District Courts 302. No specific discovery document designation was apparently ever made for consideration with the many dismissal motions filed by the litigants.

provide a defense to the contractual statute of limitations. As a constituent of a statute of limitations application, discovery is generally a tort concept. *Mills v. Garlow,* 768 P.2d 554 (Wyo.1989); *Anderson v. Bauer,* 681 P.2d 1316 (Wyo.1984); *ABC Builders, Inc. v. Phillips,* 632 P.2d 925 (Wyo.1981). See, for example, *Young v. Young,* 709 P.2d 1254 (Wyo.1985); W.S. 1–3–106, conversion and fraud premised on discovery; and W.S. 1–3–107, professional care two-year statute of limitations. *Metzger v. Kalke,* 709 P.2d 414 (Wyo.1985). Conversely, it is clear that the improvement to real property statute, W.S. 1–3–111, was intended to apply without regard for discovery in application of its ten year period. The principle applied to contractual actions is that the statute of limitations commences to run when the right or cause of action accrues, *Bliler v. Boswell, Administration,* 9 Wyo. 57, 59 P. 798 (1899); *Roberts,* 304 A.2d 364, which in this case is when the work was done and the report filed. *Sears, Roebuck & Co. v. Enco Associates, Inc.,* 43 N.Y.2d 389, 401 N.Y.S.2d 767, 372 N.E.2d 555 (1977); *North Carolina States Ports Authority v. Lloyd A. Fry Roofing Co.,* 294 N.C. 73, 240 S.E.2d 345 (1978). This is usually the time of a breach of a contractual agreement rather than the time that actual damages are sustained as a consequence of the breach. *John J. Kassner & Co., Inc. v. City of New York,* 46 N.Y.2d 544, 415 N.Y.S.2d 785, 389 N.E.2d 99 (1979); 51 Am.Jur.2d, *supra,* § 126.

We do not now determine that discovery can never become a requirement for commencement of statute of limitations in contractual actions; for example, when fraud or intentional concealment is alleged. *Olson v. A.H. Robins Co., Inc.,* 696 P.2d 1294, 1299 (Wyo.1985). However, this case provides no allegation or evidence by Architect and Mechanical Engineer upon which the district court was faced with factual review of an explanation which would fore-

close contract work completion to trigger the statute of limitations commencement.[17] Within this record, neither the district court nor this tribunal are favored with the soil test report, any evidence of the oral contract upon which it was prepared, a copy of the construction contract, a copy of Architect's contract, or Mechanical Engineer's contract with Architect. We are provided no specific details whether either Architect or Mechanical Engineer ever had contact with Soil Lab, except whatever non-defined use of the June 9, 1977 report they made.

Summarizing this case from all factual documents of record supplemented by admissions in pleading, the following scenario is reflected. A member of the Library Trustees asked Soil Lab to do some soil testing of the anticipated site for construction. Existence of an old graveyard on the site was not unknown, but whether reflected in any way in the report is not a matter of record. The work of Soil Lab was completed by preparation and submission of the report of June 9, 1977, insofar as the Library Trustees were concerned. A contested issue developed whether Architect knew about the graveyard site, but a considerably more heavily contested issue ensued whether Architect then told Mechanical Engineer about its existence. It is clear from the one factual stipulation and other documentation that during construction not only the existence of the graveyard but the fact that all of the graves had not been emptied did come to the attention of all of the involved parties.

The primary factual constituent of the available record is a Chen and Associates technical investigation report dated June 30, 1985, which was attached to the original complaint and provided conclusions which were obviously contested in some degree in technical workup. However, the conclusion of that report was not a particularly contested issue in the succeeding pleadings for the two and one-half year file develop-

---

**17.** The burden of proof of exception or excuse from non-application of the statute rests upon the plaintiff including discovery, *New Amsterdam Casualty Co. v. Industrial Accident Commission,* 66 Cal.App. 86, 225 P. 459 (1924), while proof of the application of the limitation period is an obligation in allegation and proof of the defendant, *Olson,* 696 P.2d 1294; 51 Am.Jur.2d, *supra,* § 484. *See* W.R.C.P. 8(c).

ment. *The question at factual issue was allocation of the blame for the obvious problem.* That simple conclusion was:

(1) The damage occurring to the building is being caused by settlement of the fill and/or the natural soils as a result of these materials becoming wetted due to extremely poor site grading conditions and the absence of an underdrain system.

The second and more definitive document for Architect's and Mechanical Engineer's reliance is a joint statement of facts filed August 17, 1987 and executed in behalf of all litigants. At that time, the direct action Assigned Claim amendment *had not* been introduced so that the Soil Lab's 1977 report was then only significant as a defense by Contractor, Architect and Mechanical Engineer to Library Trustees's charges of improper construction.[18]

In the pretrial submission joint statement, references to Soil Lab included:

Lincoln–DeVore, Inc., a Colorado corporation, prepared the original subsurface soils investigation report for the Library site dated June 9, 1977. In addition, Lincoln–DeVore, Inc. performed certain soils density tests during the construction phase on the project.

\*      \*      \*      \*      \*      \*

E.W. Allen & Associates, Inc. has filed a counterclaim against the Sweetwater County Library Board of Trustees for the alleged negligence of the Board's alleged agent, Lincoln–DeVore, Inc., in rendering the original soils report and conducting the soils testing which it alleges are attributable to the Sweetwater County Library Board of Trustees. In addition, E.W. Allen & Associates, Inc. has asserted a cross-claim against Superior Lumber Company, seeking contribution and/or indemnification in the event that the Sweetwater County Library Board of Trustees' damages are attributable to E.W. Allen's negligence. E.W. Allen & Associates, Inc. has also filed a third-party complaint against Lincoln–

DeVore, Inc. for its alleged negligence in providing the soils report and soils testing services in conjunction with the construction of the library building. In asserting its third-party complaint against Lincoln–DeVore, Inc., E.W. Allen & Associates, Inc. seeks contribution and/or indemnification from Lincoln–DeVore, Inc. as well as a second claim for relief seeking damages as a direct and proximate result of the alleged negligence of Lincoln–DeVore, Inc.

\*      \*      \*      \*      \*      \*

\* \* \* Richardson Associates has asserted a third-party complaint against Lincoln–DeVore, Inc. for indemnity and/or contribution as well as comparative negligence in the event that the Sweetwater County Library Board of Trustees recovers against Richardson Associates.

Lincoln–DeVore, Inc. has filed counterclaims against E.W. Allen & Associates and Richardson Associates for pursuing recovery against Lincoln–DeVore, Inc. without any factual basis and has asked for reimbursement of its costs in defending against such actions, including attorney's fees, expert witness fees and other reasonable costs.

\*      \*      \*      \*      \*      \*

\* \* \* the following issues are to be submitted to the finder of fact:

\*      \*      \*      \*      \*      \*

D. At the time of the original soils investigation, was the soil engineer for the project, Lincoln–DeVore, Inc., an independent contractor or an agent of the Sweetwater County Library Board of Trustees?

E. Was Lincoln–DeVore, Inc. negligent in the performance of its duties in rendering the original soils investigation and in conducting the soil density tests during the construction of the Sweetwater County Library?

F. Is the negligence, if any, of Lincoln–DeVore, Inc. attributable to itself,

---

**18.** The scope of the case preparation and development can be derived from the exhibits listed in pretrial submission material, but the exhibits were not attached to this record for consideration of text.

other parties, or to the Sweetwater County Library Board of Trustees?

We hold that at least the ten year statute of limitations applied, a discovery defense did not extend the time, the complaint was not filed within ten years and the district court properly sustained the motion on this direct action claim as a motion to dismiss/summary judgment dismissal.

## IV. AMENDED THIRD–PARTY CLAIM—THIRD–PARTY BENEFICIARY

With resolution of the assigned contractual claims, there remains for our consideration the initial third-party complaints involving contribution and indemnity, and the subsequently inserted third-party beneficiary causes. We will first address the amended third-party claim—third-party beneficiary—since it came into the litigation at the same general time as the Assigned Claim and provides, in perspective, somewhat similar issues.

Library Trustees sued Contractor and Architect on a breach of contract basis and then Architect's representative, Mechanical Engineer, on a third-party beneficiary premise. Architect and Mechanical Engineer defended with pleading on the merits and by answer of affirmative defenses including assertion that the faulty building was the responsibility of the agent of the Library Trustees—its Soil Lab—who caused the bad building by violating its separate contract to provide to Owner good soil information and construction advice. Concurrent with that affirmative defense, Architect and Mechanical Engineer next sued Soil Lab claiming a third-party right of express indemnity, contribution, implied indemnity and later third-party beneficiary by virtue of the contractual arrangements

between Owner and Soil Lab and Contractor and Soil Lab. After Architect and Mechanical Engineer settled with Owner, they now claim recovery by a previously non-asserted claim obtained by settlement from Owner as a condition of the settlement. Into this morass, Soil Lab contends that the settlement eliminated the vehicle for a third-party proceeding and that if Architect and Mechanical Engineer want to chase further litigation, it should be pursued by a new lawsuit. The second defense claims that the acceptance of the assignment by Architect and Mechanical Engineer from the Library Trustees, of any claim that the Library Trustees had, eliminates a factual basis for any residual third-party claims. A multitude of issues are engendered, some of which are not favored by citation of authority in present briefing.

### A. Third–Party Beneficiary

Architect and Mechanical Engineer claim the work order contract between Soil Lab and the Library Trustees as well as the work done by Soil Lab for Contractor created rights for them to sue as third-party beneficiaries.[19] The addition of this claim as an issue for appeal raises procedural and substantive issues, not the least of which is inadequate briefing and minimal record. These claims were added in 1988 to the collection of earlier presented third-party claims at the same time the Assigned Claim amendment was filed. Technically, this pleading did not state a further third-party recovery basis, but provided a direct claim based on third-party beneficiary entitlement. The pleading presented was filed without leave of the district court and then, without a motion to strike or defensive attack on improper filing, was initially

**19.** The negligence—Uniform Commercial Code Warranty—in the uranium mill building burn up cases of *Centric Corp. v. Drake Bldg. Corp.*, 726 P.2d 1047 (Wyo.1986) and *Kirby Bldg. Systems v. Mineral Explorations Co.*, 704 P.2d 1266 (Wyo.1985), being totally dissimilar in concept, provide no guidance here. *Kirby Bldg. Systems* involved a verdict resolved case tried in negligence exploring percentage allocation of joint tort-feasor liability under a comparative negligent concept. Centric as the contractor and

Kirby Building as the supplier of the not so fireproof material were held jointly and severally liable for most of the damage. Drake Building, as a franchisee of Kirby, bought out of negligence exposure in the first case for $250,-000 and then found itself facing a breach of warranty imposition in the second case from Centric. The exclusiveness of the joint contribution remedy was consequently addressed, rejected and compared to warranty responsibilities. *Centric Corp.*, 726 P.2d at 1053.

answered by general denial and affirmative answers.

Architect and Mechanical Engineer, by their separate but similar amended third-party complaints, stated a third-party beneficiary direct cause of action based upon not only the work done for the owner by Soil Lab, but also for Contractor. The amended complaint was filed April 4, 1988 without approving district court order. The contract dates alleged from which the third-party beneficiary status and right was claimed was a contract between Owner and Soil Lab of June 9, 1977, and Contractor for compaction tests in the summer and early fall of 1978. Soil Lab answered by initially proceeding to file a general denial supplemented with defensive pleadings incorporating previously stated defenses to the indemnity contribution claims and further stating specific defenses of failure to state a claim and statute of limitations.

Unfortunately, present briefing serves poorly for our resolution, where essentially confined to the propriety of filing the unapproved amendment including factual argument, that it was or was not done by oral agreement and stipulation. After Soil Lab had filed the April 12, 1988 answer which constituted an unqualified response, it then for the first time in May raised a W.R.C.P. 15(a) no court approval defense.[20] Like all other motions filed in the 1988 barrage of defensive proceeding emanating from all of the parties, the district court ruling came on this issue by the dispositive decision letter and succeeding judgments of July 1988. In that result, we cannot tell whether the basis of the district court's decision was substantive or procedural or, for that matter, statute of limitations and whether applied on the basis of an oral or written contract perspective.

Briefing on this subject by Architect and Mechanical Engineer, sketchy as it is, advances an unrecorded "understanding" and that they yet should be entitled to *receive an order to correct the technical deficiency.*

No decision of either the failure to state a claim or the statute of limitations as alternative justifications for the district court's dispository order is specifically stated.

Architect and Mechanical Engineer addressed discretion of the court to reject filing the third-party complaint, *Stichting Mayflower Recreational Fonds v. Newpark Resources, Inc.,* 903 F.2d 741 (10th Cir.1990), and supplemented that argument by contention that the issues raised claiming a third-party beneficiary entitlement to recovery present entirely new causes of action. With that, we completely agree. Not only were new issues (third-party beneficiary claims) presented, but a new contractual arrangement derived from work done by Soil Lab *for the Contractor* presented in essence a new party to what had previously been a third-party indemnity contribution claim arena of litigation. Although a procedural resolution may have been appropriate; e.g., no order authorizing amendment, we are faced with confusion of facts, an insufficient record and no specified decisional basis for court decision. We cannot specifically define litigative briefing or court decision in the district court which addressed either waiver by answer of the lack of court order for amendment or waiver of the waiver issue by lack of presentation. Here addressed is only the initial amendment without district court order. This is a discretional decision which we cannot tell whether the district court ever made.

The dispository district court order granted a dismissal "of the amended third party complaint [including first and amended third party claims]" and did not provide any language constituting acceptance of the attack of improperly filing the amended third-party claims creating an extension of the "third-party proceedings;" although technically, the amended claims are not third-party claims. Considering the record and the often stated rule of sustaining the

---

**20.** Waiver of district court approval otherwise required at that stage for proper amendment is also neither argued nor briefed in present appeal. Waiver of the lack of district court approval for amendment objection by interme-

diate answer would also be an affirmative response which in itself could be waived since neither pursued before the district court nor argued in this tribunal. *Ross v. Texas One Partnership,* 796 S.W.2d 206 (Tex.App.1990).

decision of the district court if any basis under law is established, we choose to address the amended claims substantively instead of remanding for further proceeding by the district court.

■ There is no difficulty in affirming the district court decision in dismissing the third-party beneficiary claim contained within the amended third-party claims where related to the work and agreements between Owner and Soil Lab. The pleaded date of work done in 1977 is more than ten years before the claim was filed. It is obvious that even more so than the action on the assigned claim that the statute of limitations—either oral agreement eight years, W.S. 1-3-105(a)(ii), or ten years, W.S. 1-3-105(a)(i)—had passed. The burden of proof for an exception to the statute of limitations rested with Architect and Mechanical Engineer. *New Amsterdam Casualty Co. v. Industrial Accident Commission*, 66 Cal.App. 86, 225 P. 459 (1924).[21]

■ We are then troubled with the status of this record that the work obviously done by Soil Lab for Contractor, with either of whom Architect and Mechanical Engineer had no contractual relationship, was within ten years of the amended filing date, but the complaint alleges only a contract and neither states that it was oral nor written. The district court could have possibly determined the pleading was insufficient to escape the statute of limitations by failure to allege a written contract.[22] If we take the entire record as it is, the issue presented is whether a work order prepared by Contractor to obtain construction time compaction tests created a third-party beneficiary right for enforcement in Architect and Mechanical Engineer who had previously designed the building and now were engaged in some rather undefined fashion in supervising construction.

We have disposed of the claim founded upon Owner's and Soil Lab's 1977 report based on the statute of limitations and now affirm the dismissal of Contractor's and Soil Lab's arrangement for third-party beneficiary entitlement afforded to Architect and Mechanical Engineer on the basis of failure to state a claim *within the record then existent* as alleging or demonstrating more than an incidental beneficiary relationship. It is elemental that unless a contract was entered into for the benefit of a third party, no one but the parties to the contract can be bound by it or obtain rights under it. *American Surety Co. of New*

21. By pursuing a third-party beneficiary status claim based on Owner's and Soil Lab's relationship, Architect and Mechanical Engineer present within that theory the same rights which they apparently claim as assignee by usage of the Assigned Claim. The statute of limitations preclusion resolves this academic exercise whether one can identically and simultaneously claim rights as a third-party beneficiary and as an assignee.

22. This case in all content provides unusual and complex perspectives when in 1988, the amended third-party complaint was filed adding two new causes of action, raising the question of whether the new pleading implanted on an existing record within pleading and factual content relates the newly filed contentions equally to the scope of the record developed for the causes to which it was added. In order to get somewhere out of this morass, we determine that the district court was not required to ignore what was already of record in ruling on the motion to dismiss for the two new claims even though entirely new litigative proceedings were thrust into an existing lawsuit.

In that context, there is a basic document in addition to the scores of pleadings and memoranda. That basic document in itself establishes a defined factual record by statement and itemization of witnesses and exhibits constituting a joint statement filed August 17, 1987 and executed by all attorneys for all parties. The document totalled thirty-one pages plus eighteen pages listing proposed exhibits and included twenty-seven named witnesses and about 375 exhibits.

Out of this we can tell that Architect was employed mid-year 1977 as was Mechanical Engineer. The job was put out for bid in the first half of 1978 based on architectural plans dated May 23, 1978 and the construction contract was signed about July 19, 1978. Construction started on July 25, 1978. Soil Lab had prepared predesign soil tests for Owner dated June 9, 1977, and then provided fifteen compaction tests for Contractor commencing August 30, 1978, and continuing to around mid-year 1979 by a purchase order from Contractor dated July 26, 1978. The substantial completion certificate was issued July 21, 1978. On April 14, 1984, Soil Lab provided a report to Owner making recommendations for correction of the faulty construction problem then observed in the building including movement and cracking.

*York v. Broadway Imp. & Inv. Co.*, 39 Wyo. 195, 271 P. 19 (1928).

Considering the two year course of pending motions and discovery, the 1988 amended claim relating to the third-party beneficiary cause presented by the Architect and Mechanical Engineer against Soil Lab first alleged a Contractor–Soil Lab compaction testing agreement, and then stated in the two separate pleadings:

"Lincoln–DeVore's [Soil Lab] performance under said contract was intended for the direct benefit of Richardson [Architect] * * * and E.W. Allen [Mechanical Engineer]." [paragraph 12]

We affirm the district court in decision that this statement is insufficient to relate a third-party beneficiary claim considering the factual and pleading history of the case where real specificity was possible, including previously listed work orders from which this contention could arise or other details or documents establishing any informative agreement between Contractor and Soil Lab to show an agreement that the compaction tests were for the intended benefit of the supervising Architect or Mechanical Engineer.[23]

Restatement (Second) *Contracts* § 302 (1981), formerly Restatement (First) § 133 (1932), has been found by a number of courts to provide a convenient framework for analysis.[24] Restatement (Second) *Contracts, supra,* § 302 provides:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

It is apparent in examining the propriety of the order of dismissal entered by the district court that we are called to assess application of either Restatement (Second) *Contracts, supra,* § 302(1)(b) performance beneficiary, or to, if at all, an incidental beneficiary, Restatement (Second) *Contracts, supra,* § 302(2). The incidental beneficiary exclusion had its source in a statement in *German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 33 S.Ct. 32, 57 L.Ed. 195 (1912), which was later republished by statement of Justice Holmes in *Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed

**23.** The report for Owner of June 1977 had been done before Architect and Mechanical Engineer became construction participants. Although there may be Wyoming precedent to the contrary, *Lane Co. v. Busch Development, Inc.*, 662 P.2d 419 (Wyo.1983), we recognize the general law that a third-party beneficiary does not have to exist in participation earlier or at the same time when the claimed agreement establishes the third-party beneficiary status if the intent *at that time* to later provide benefit by class or character can be established by the claimant. *Anderson v. Rexroad*, 175 Kan. 676, 266 P.2d 320 (1954); *Flattery v. Gregory*, 397 Mass. 143, 489 N.E.2d 1257, 1260 (1986); *RGK, Inc. v. United States Fidelity & Guaranty Co.*, 292 N.C. 668, 235 S.E.2d 234 (1977); Restatement (Second) *Contracts* § 308 (1981). Absence of existence may provide evidence of non-benefit intent, but is not dispositive of the right to claim. Restatement (Second) *Contracts, supra,* § 302.

However, in this case as to Contractor's and Soil Lab's work, Architect and Mechanical Engineer cannot run a third-party beneficiary theory backwards to seek benefit from the 1978–79 testing for the design they did a year or so earlier before the testing was provided. Consequently, Architect and Mechanical Engineer cannot structure their theory as justification from and escape for liability for improper design by charging cause to Soil Lab. We then have the issues of this case confined to their construction supervision and we discern no adequate pleading in the quoted sentence to reach beyond an incidental beneficiary characterization.

**24.** Justification is found in analysis of the difference between Restatement (First) and Restatement (Second) in that Restatement (First) constituted a division of the subject into three categories—donee, creditor and incidental beneficiary—while Restatement (Second) differently divides claimants into a money payment beneficiary, promised performance beneficiary and the incidental beneficiary who has no enforceable rights. *See Quigley v. General Motors Corp.*, 660 F.Supp. 499, 506 (D.Kan.1987); Restatement (Second) *Contracts, supra,* §§ 302 and 315.

290, 292 (1927): " 'Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement, to which he is not a party, he must at least show that it was intended for his direct benefit.' "

This court addressed the Restatement in *Graham and Hill v. Davis Oil Co.*, 486 P.2d 240 (Wyo.1971). The opinion questioned the difference between intent and reliance without a definitive decision. That question lost out in recodification of the restitution of Restatement (Second) *Contracts, supra,* § 302, which clearly adopted the intent criteria rather than including any reliance quotient for application of a third-party beneficiary right. The difference is significant in that the intent characterizes the agreement content of conduct while the reliance addresses the characteristics and behavior of the third party. In Wyoming, the intent rule was specifically adopted by this court in *Wyoming Machinery Co. v. United States Fidelity and Guaranty Co.*, 614 P.2d 716 (Wyo.1980), although we have not had occasion before now to directly consider the text of Restatement (Second) *Contracts, supra,* § 302 which had been adopted by the American Law Institute effective May 17, 1979. *Cf. Hoiness–LaBar Ins. v. Julien Const. Co.*, 743 P.2d 1262 (Wyo.1987), considering third-party beneficiary, but without evaluation of the Restatement text.

A decisive array of cases directs us to conclude that the requisite Restatement (Second) *Contracts, supra,* § 302(1) intended beneficiary status is not presented here sufficiently to escape the motion attack by Soil Lab. The two part test stated in the nationally leading third-party beneficiary case of *Guy v. Liederbach*, 501 Pa. 47, 459 A.2d 744, 751 (1983) is persuasive.

There is thus a two part test for determining whether one is an intended third party beneficiary: (1) the recognition of the beneficiary's right must be "appropriate to effectuate the intention of the parties," and (2) the performance must "satisfy an obligation of the promisee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the bene-

fit of the promised performance." The first part of the test sets forth a standing requirement. For any suit to be brought, the right to performance must be "appropriate to effectuate the intentions of the parties." This general condition restricts the application of the second part of the test, which defines the intended beneficiary as either a creditor beneficiary (§ 302(1)(a)) or a donee beneficiary (§ 302(1)(b)), though these terms are not themselves used by Restatement (Second). Section 302(2) defines all beneficiaries who are not intentional beneficiaries as incidental beneficiaries. The standing requirement leaves discretion with the trial court to determine whether recognition of third party beneficiary status would be "appropriate." If the two steps of the test are met, the beneficiary is an intended beneficiary "unless otherwise agreed between promisor and promisee."

See also the application to construction-financing case of *Meyers Plumbing and Heating Supply Co. v. West End Federal Sav. and Loan Ass'n*, 345 Pa.Super. 559, 498 A.2d 966 (1985).

A case in pleading which is surprisingly similar to this case considering whether the basic agreement was intended for the direct benefit is *Valley Landscape Co., Inc. v. Rolland*, 218 Va. 257, 237 S.E.2d 120 (1977). There the contested pleading alleged for a third-party beneficiary claim: " '4. That certain provisions of [architect's] contract with [owner] were for the benefit of the general contractor.' " *Id.* 237 S.E.2d at 122. In *Valley Landscape Co., Inc.*, the contractor filed a third-party complaint against the architect to result in trial court dismissal of both the original and amended pleading. On appeal, the Virginia Supreme Court stated:

The amended motion does not set forth any such "provisions", and the contract between [owner] and [architect] was not made a part of the record. While [owner] contracted with the architect * * * to draw plans and specifications and to make periodic site inspections, their contract was made prior to the employment

by [owner] of a contractor to build the project. It was a separate and independent construction contract that was thereafter made by [owner] and [architect].

*Id.* at 122.

The rule then applied in the case is persuasive here as to the similar relationship of Soil Lab to both Contractor and Owner.

"Our review of the law suggests to us that supervision generally is undertaken for the benefit of the owner to insure that the construction is proceeding in compliance with the plans and specifications approved by the owner. *In general terms, a contractor is an incidental beneficiary absent clear intent manifested in the owner-architect contract to the contrary.*"

*Id.* at 123 (quoting *A.R. Moyer, Inc. v. Graham,* 285 So.2d 397, 403 (Fla.1973) and emphasis in original).

We would follow the clear intent principle of the *A.R. Moyer, Inc.* and *Valley Landscape Co., Inc.* cases:

[T]hat it is not sufficient that [contractor] would be incidentally benefited by a proper performance of duties on the part of the architect. We find no allegation of facts in [contractor's] third-party motion for judgment from which we could draw a conclusion that the owner-architect agreement was "clearly and definitely intended" and made to bestow a direct benefit on [contractor].

*Valley Landscape Co., Inc.,* 237 S.E.2d at 124. Similarly decided is *Hillbrook Apartments, Inc. v. Nyce Crete Co.,* 237 Pa.Super. 565, 352 A.2d 148 (1975), which is also a construction case involving improper floor installation. Intent to extend rights to the third party must be indicated in the contract which also defines the assumption of duty. *Matternes v. City of Winston–Salem,* 286 N.C. 1, 209 S.E.2d 481 (1974); *Schwinghammer v. Alexander,* 21 Utah.2d 418, 446 P.2d 414 (1968).

The same general rule was stated by the Illinois Supreme Court in *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.,* 78 Ill.2d 381, 36 Ill.Dec. 338, 400 N.E.2d 918 (1980), where, however, the court found the architectural contract displayed a direct intent to make the state a beneficiary. As direct beneficiary, the state as a user was entitled to pursue in its own name recovery against the architects' faulty construction of a state penal facility.

"The rule is settled in this state that, if a contract be entered into for a direct benefit of a third person not a party thereto, such third person may sue for breach thereof. The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract. If direct he may sue on the contract; if incidental he has no right of recovery thereon. This rule has been announced without variation in numerous cases decided by this court. * * *

It is not seriously argued that such is not the rule in Illinois, but the argument turns rather on the application of the rule to the construction of the contract. In such a case no opinion in an adjudicated case, even of this court, is controlling unless the language of the contract or the circumstances surrounding the parties are substantially the same, since each case must depend upon the intention of the parties as that intention is to be gleaned from a consideration of all of the contract and the circumstances surrounding the parties at the time of its execution. * * * The rule is that the right of a third party benefited by a contract to sue thereon rests upon the liability of the promisor, and this liability must affirmatively appear from the language of the instrument when properly interpreted and construed. The liability so appearing can not be extended or enlarged on the ground, alone, that the situation and circumstances of the parties justify or demand further or other liability."

*Id.* 400 N.E.2d at 919 (quoting *Carson Pirie Scott & Co. v. Parrett,* 346 Ill. 252, 257–58, 178 N.E. 498, 501 (1931)). Furthermore, other cases make clear that the responsibility for adequate pleading and burden of proof rest with the third-party claim-

ing beneficiary status for entitlement to proceed in its own name under a contract of the other parties. *Ross v. Imperial Const. Co., Inc.*, 572 F.2d 518 (5th Cir. 1978).

We would follow this decisive authority and determine that, without regard for discretion to disallow amendment whether or not the decision was postured on that basis and in the face of an inadequate record to assess application of a statute of limitations, the district court was entitled to hold as it did that the pleading failed to state a claim for recovery as a third-party beneficiary for which within the perspective of the case relief could be granted. *Valley Landscape Co., Inc.*, 237 S.E.2d 120. Architect and Mechanical Engineer fail to carry their burden in pleading by lack of any documentary or even oral reference to an agreement whereby Soil Lab undertook testing for the use or benefit of Architect and Mechanical Engineer as they conducted whatever supervisory responsibilities they might have or, for that matter, that the testing done by Soil Lab had anything to do with the design and landscaping problems which created the problems involved in this litigation. At best, any claim benefit by Architect and Mechanical Engineer was incidental. *Lake Placid Club Attached Lodges v. Elizabethtown Builders, Inc.*, 131 A.D.2d 159, 521 N.Y.S.2d 165 (1987); *Moss v. West Tacoma Newsprint Co.*, 1 Wash.App. 361, 462 P.2d 256 (1969).

Assuming without deciding a proper introduction of the amendment to add the third-party beneficiary issues into this lawsuit, we find no proper pleading to state a claim upon which relief can be granted.

## V. INITIAL THIRD–PARTY COMPLAINT

### A. Contribution

■ Entirely different concepts are inserted into this litigation by the classical introduction of the contribution and indemnity claims as third-party complaints. Yet another complexity is created by the broad arguments presented for recovery under these theories. Architect and Mechanical Engineer recognize the difference between tort and contract and consequently attempt to introduce both by alleging negligent performance of a contract as a charge against Soil Lab's services for Owner in order to have resort to a tort theory for comparative contribution after payment and settlement of claims for the principal loss in the bad building as a breach of contract lawsuit. This court has stated that "[c]ontribution applies only in tort." *Centric Corp. v. Drake Bldg. Corp.*, 726 P.2d 1047, 1053 (Wyo.1986). A claim of defense arising out of tort concepts, such as indemnity, is not available where the claim of plaintiff is premised upon contract. *Centric Corp.*, 726 P.2d at 1054. Here, the opposite is presented where contractual dispute about the quality of services performed are subjected to challenge by tort concepts although the cause remains in contract.

Architect and Mechanical Engineer try to read general contribution language too broadly. Clearly, contribution can be applied to joint duties created by agreement such as joint obligors on a note, mutual promisors or partnership relationship. What this court clearly indicated in application of the statutory contribution among the joint tort-feasors process only applies to tort based liabilities and not, as in this case, divergent contractual responsibilities in a building construction. *Centric Corp.*, 726 P.2d 1047. *See* Restatement (First) *Restitution* §§ 81 and 86 (1937); 18 Am. Jur.2d *Contribution* § 1 (1985); Annotation, *Uniform Contribution Among Tortfeasors Act*, 34 A.L.R.2d 1107 (1954); 12 Uniform Contribution Among Tortfeasors Act (U.L.A.) § 1 at 63 (1975) and cases therein cited.

■ The right of contribution between joint tort-feasors is dependent upon statute. *Convoy Co. v. Dana*, 359 P.2d 885 (Wyo.1961); *Denneler v. Aubel Ditching Service, Inc.*, 203 Kan. 117, 453 P.2d 88 (1969). *Cf. Stein v. Whitehead*, 40 A.D.2d 89, 337 N.Y.S.2d 821 (1972), considering *Dole v. Dow Chemical Co.*, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972) and *Kelly v. Long Island Lighting Co.*, 31 N.Y.2d 25, 334 N.Y.S.2d 851, 286 N.E.2d 241 (1972), which introduced comparative

negligence and right of contribution into New York law by court decision for application to joint tort-feasors. *See likewise Tipton v. Texaco, Inc.*, 103 N.M. 689, 712 P.2d 1351 (1985) and *Scott v. Rizzo*, 96 N.M. 682, 634 P.2d 1234 (1981).

■ Within the context of these theories *as a third-party action,* we will not permit expansion of the original principal's lawsuit claim as plaintiff beyond its asserted claims for contractual assessment of a right to a third-party tort theory for contribution. We will confine application of the first third-party claims to the issues before the participants when settlement was made for which Architect and Mechanical Engineer now seek to be reimbursed for all, part of or more than all of what they may have paid to resolve their own contractual disputes with the Library Trustees.[25] This aspect of the case is confined to its historically pleaded status of a third-party claim seeking liability over primary responsibility. Since the Library Trustees sued Architect and Mechanical Engineer on contract, tort contribution theories are not also available to Architect and Mechanical Engineer to spread the risk.

Contribution as a theory of statutory recovery does not apply since within this context, it is a tort theory of shared liability and does not apply to reduce breach of contract damages for faulty construction.

B. Express Indemnity [26]

■ Express indemnity as a theory cannot be applied since Soil Lab clearly never agreed to specifically indemnify any construction participant who entered into later contractual relations with Owner during the building activities. *See Wyoming Bank & Trust Co. v. Waugh*, 606 P.2d 725 (Wyo.1980).

■ The basis of contributory responsibility by express indemnity is based on contractual undertaking establishing an agreed obligation. *Cities Service Co. v. Northern Production Co., Inc.*, 705 P.2d 321 (Wyo.1985); *Wyoming Bank & Trust Co.*, 606 P.2d 725; *Pan American Petroleum Corp. v. Maddux Well Service*, 586 P.2d 1220 (Wyo.1978). Obviously here, Soil Lab, in performing soil tests on an oral order, did not enter into an express indemnity agreement from which Architect and Mechanical Engineer can find an enforceable undertaking to indemnify them against improper building design. Express indemnity does not exist here. A strict construction rule applies for both the existence of express indemnity and its construction where a party may become obligated to answer for the liabilities of another. *Pan American Petroleum Corp.*, 586 P.2d 1220; *Freund v. Utah Power & Light Co.*, 793 P.2d 362 (Utah 1990).

There is nothing in the oral relationship or the submission of a documentary report status of this case by pleading or supporting facts which justifies an application of express indemnity. Without agreement *between these litigants,* there is nothing provided to create the express contractual indemnity duty. Time sequences become critical and whatever might be construed within the oral agreement relationship of

---

**25.** It is apparent that we arguably have a statute of limitations issue here also if professional services were involved for two years—or oral agreement eight years (1977 to 1985). That issue, barely pleaded at best and not argued at all, will not be further considered.

**26.** Contribution and indemnity are two doctrines which are used as tools to reach the same goal: a fair allocation of the ultimate burden of a tort recovery among those legally responsible. Once the victim has been compensated, who should, in all fairness, be made to pay?  * * *

    *    *    *    *    *    *

    Judge Learned Hand stated that, "[I]ndemnity is only an extreme form of contribution."

Indemnity allows one who has discharged a common obligation to recover the entire amount he has paid from the party primarily liable. In contrast to contribution, it provides for shifting the total burden from one party to another. Indemnity can be conveniently broken down into three general categories: Express contractual indemnity, implied contractual indemnity (implied-in-fact indemnity), and noncontractual indemnity (implied-in-law indemnity).

Comment, *Contribution and Indemnity in California,* 57 Calif.L.Rev. 490, 491–92 (1969) (footnotes omitted and quoting *Slattery v. Marra Bros.*, 186 F.2d 134, 138 (2nd Cir.1951)).

Soil Lab and the Library Trustees, it did not involve an agreed undertaking by Soil Lab to benefit or indemnify the later involved participants who were then not determined. *Wyoming Johnson, Inc. v. Stag Industries, Inc.*, 662 P.2d 96 (Wyo.1983); *Heckart v. Viking Exploration, Inc.*, 673 F.2d 309 (10th Cir.1982). *Cf. Cities Service Co.*, 705 P.2d 321, where an expressly applicable written indemnity provision applied.

### C. Implied Indemnity

■ Next requiring consideration is implied contractual indemnity arising *when there is some contractual relationship between the party seeking indemnity and the party against whom indemnity is sought* so that the latter owes an independent duty to the former. *See Vickery v. Reliable Elec. Co.*, 703 F.2d 488 (10th Cir.1983), following language we provided in *Pan American Petroleum Corp.*, 586 P.2d at 1224. This court addressed the concept in the asphyxiation death case of *Miller v. New York Oil Co.*, 34 Wyo. 272, 243 P. 118 (1926). That event of loss—death of a tenant—was the product of the utility's active creation. The landlord who assessed wrongful death damage was entitled to indemnity from the principal actor whose wrongful act had caused the exposure. *Miller*, as a tort damage indemnity case, does not assist in resolution of this present contractual case for yet another reason—the utility and the homeowner had a mutual contractual relationship involving a gas stove out of which the asphyxiation death resulted.

■ In this case, no contractual arrangement of any kind exists between Soil Lab and Architect. *See likewise Nomellini Const. Co. v. Harris*, 272 Cal.App.2d 352, 77 Cal.Rptr. 361, 364 (1969), involving a non-supplied steel product causing subcontractor liability to the contractor and resulting indemnity claim against the supplier where that court, in quoting 42 C.J.S. *Indemnity* § 20 at 594 (1944), said " '[t]he obligation to indemnify may grow out of an implied contractual relation [or out of a liability imposed by law between contracting parties].' "

■ The significant function of implied contractual indemnity is to enforce rights which flow from the relationship created by the actual indemnitor—indemnitee contractual relationship. *Chirco Const. Co., Inc. v. Stewart Title and Trust of Tucson*, 129 Ariz. 187, 629 P.2d 1023 (1981). Here we have no contractual relationship between these litigants and the theory fails for the same reason. Like third-party beneficiary and express indemnity, implied indemnity cannot be created where there is no express or implied contractual relationship. *Vickery*, 703 F.2d 488, applying Wyoming Worker's Compensation law.

### D. Equitable Indemnity

■ The most difficult issue to be extricated from this complicated course of pleadings is whether an *equitable implied indemnity responsibility* can be introduced where there are no contractual relationships within these factual circumstances. Application of equitable indemnity would require that Soil Lab should hold harmless or contribute to the contractual damages sustained by the building designers when a faulty building is produced. Essentially presented is whether, in addition to defenses on the merits of breach, the designing participant can surcharge its damages after settlement with Owner against the agent of Owner with which it individually had no contractual relationship.

It is apparent that the non-availability of implied equitable indemnity is substantiated by the same factual parameters of the parties' relationship, which also denies express indemnity and third-party beneficiary. There is simply no restitution theory as there was no express or implied agreement upon which Soil Lab should be liable to indemnify Architect and Mechanical Engineer for their own failures in unsatisfactorily designing the building. Obviously, if Architect and Mechanical Engineer wanted additional soil testing upon which to rely, they certainly could have ordered those services as an adjunct to the work for which they had contracted.

The basic premise and outline of this source of recovery—equitable indemnity—

was defined in *Bay Development Ltd. v. Superior Court (Home Capital Corp.)*, 50 Cal.3d 1012, 269 Cal.Rptr. 720, 729–730, 791 P.2d 290, 299–300 (1990), where that court indicated:

"The obligation of indemnity, which we have defined as 'the obligation resting on one party to make good a loss or damage another has incurred' [citation] may arise under the law of this state from either of two general sources. First, it may arise by virtue of express contractual language establishing a duty in one party to save another harmless upon the occurrence of specified circumstances. Second, it may find its source *in equitable considerations* brought into play *either by contractual language not specifically dealing with indemnification or by the equities of the particular case.* [Citations.]" (*E.L. White [v. City of Huntington Beach]*, 21 Cal.3d [497] at pp. 506–507, 146 Cal.Rptr. 614, 579 P.2d 505 [(1978)], emphasis added.)

That court further recognized:

[W]e recognized a distinction between an indemnity claim based on an express contract to indemnify, that is, *an express contractual indemnity claim,* and an indemnity claim based on "contractual language not specifically dealing with indemnification" (*E.L. White, supra,* 21 Cal.3d at p. 507, 146 Cal.Rptr. 614, 579 P.2d 505), * * *.

*Id.* 791 P.2d at 300.

The contention that a claim for *implied contractual indemnity* should be equated with a claim for *express contractual indemnity* cannot be reconciled with case law involving express indemnification clauses and circumstances where both the indemnitor and indemnitee bear some responsibility for the loss. *Id.* at 302. The subject was addressed by the New Jersey court in *Enright v. Lubow,* 202 N.J.Super. 58, 493 A.2d 1288 (App.Div.1985), *cert. denied* 104 N.J. 376, 517 A.2d 386 (1986), involving indemnity claim by an insurance company against the surveyor who mislocated the easement.

The right of indemnity rests upon a difference between the primary and secondary liability of two persons, each of whom is made responsible under the law to an injured party. It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. *Adler's Quality Bakery, Inc. v. Gaseteria, Inc.,* 32 N.J. 55, 80, 159 A.2d 97 (1960) citing *Builders Supply Co. v. McCabe,* 366 Pa. 322, 77 A.2d 368 (1951). *See Newmark v. Gimbel's, Inc.,* 54 N.J. 585, 600–601, 258 A.2d 697 (1969); *Video Station v. Frey's Motor Express,* 188 N.J.Super. 494, 499, 457 A.2d 1217 (App. Div.1983); *Neveroski v. Blair,* 141 N.J. Super., 365, 385, 358 A.2d 473 (App.Div. 1976); *cf. Rosenbloom v. Adler,* 93 N.J. 324, 351, 461 A.2d 138 (1983).

*Id.* 493 A.2d at 1303.

This leaves us then to examine whether this present factual situation is pleaded to state a basis of recovery as discussed in *Bay Development Ltd.* of equitable considerations brought into play by contractual language not specifically dealing with indemnification or separately by the equities of the particular case, citing *E.L. White, Inc. v. City of Huntington Beach,* 21 Cal.3d 497, 146 Cal.Rptr. 614, 579 P.2d 505 (1978) and *American Motorcycle Ass'n v. Superior Court of Los Angeles County,* 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978). *See likewise Miller,* 243 P. 118. The initial difficulty we have in applying *American Motorcycle Ass'n* is that it relates to a doctrine for the allocation of loss among multiple tort-feasors and in no way relates to a contract breach reimbursement thesis. *Cf. Convoy Co.,* 359 P.2d 885. The tort-feasor contribution basis of the case is defined:

In order to attain such a system, in which liability for an indivisible injury caused by concurrent tortfeasors will be borne by each individual tortfeasor "in direct proportion to [his] respective fault," we conclude that the current equitable indemnity rule should be modified to permit a concurrent tortfeasor to obtain partial indemnity from other concur-

rent tortfeasors on a comparative fault basis.

*American Motorcycle Ass'n,* 578 P.2d at 912.

Similarly, the tort conduct injury of the events which occasioned *E.L. White, Inc.,* 579 P.2d 505 is well presented. We would understand the applicability of that character of case law if the damage in this case had resulted from personal injury by virtue of the negligently constructed building instead of a contractual obligation undertaken by Architect and Mechanical Engineer to design a suitable structure. *Centric Corp.,* 726 P.2d 1047, where this court engaged in extensive discussion of contribution and indemnity, is of no assistance to Architect and Mechanical Engineer. The differentiation was recognized, "A claim of defense arising out of tort concepts, such as indemnity, is not available where the claim of the plaintiff is premised upon contract." *Id.* at 1054. *See likewise Pan American Petroleum Corp.,* 586 P.2d at 1226, where this court criticized an attempt to set up a similar dilemma and "confuse the law of torts with the law of indemnification." *See* Barrett, *Recovery of Economic Loss in Tort for Construction Defects: A Critical Analysis,* 40 S.C.L.Rev. 891 (1989); Comment, *Contribution and Indemnity in California,* 57 Calif.L.Rev. 490 (1969); Note, *The Denial of Economic Damage Recovery to Commercial Parties in Tort: Chemtrol Adhesives v. American Manufacturers Mutual Insurance Company, 42 Ohio St.3d 40, 537 N.E.2d 624 (1989),* 59 Cincinnati L.Rev. 241 (1990); and Annotation, *Products Liability: Seller's Right to Indemnity From Manufacturer,* 79 A.L.R.4th 278 (1990). Moreover, the identical duty rule and preclusion applies, *American Family Mut. Ins. Co. v. Vanman,* 453 N.W.2d 48, 51 (Minn.1990); *City of St. Joseph v. Kaw Valley Tunneling, Inc.,* 660 S.W.2d 26, 30 (Mo.App.1983); *State ex rel. Manchester Ins. & Indem. Co. v. Moss,* 522 S.W.2d 772, 774 (Mo.1975).

We hold that if implied equitable indemnity might in some unusual cases be extended to provide contribution to damages resulting from breach of contract, this is not the case. In equity, we will not here create a non-made implied agreement through which other separately contracting parties can request financial reimbursement for damages paid following settlement for default in their contract performance.

## VI. CONCLUSION

Pursuit of the rights received by assignment from Owner was foreclosed by the expiration of the statute of limitations. A lack of contractual relationship, express or implied, also justified entry by the district court of its dismissal of the initial and amended third-party claims. Consequently, for all claims presented, we affirm the district court decision.

Affirmed.

## APPENDIX

## EXHIBIT B

### ASSIGNMENT OF CLAIMS

This Assignment of Claims is dated as of the _12th_ day of _April_, 1988, from Sweetwater County Library Board of Trustees (hereinafter called "Assignor"), to Richardson Associates and E. W. Allen & Associates, Inc. (hereinafter called "Assignee");

### WITNESSETH:

For value received, Sweetwater County Library Board of Trustees, Assignor, does hereby sell, assign, pledge, transfer and set over to Richardson Associates and E. W. Allen & Associates, Inc., Assignee, all of its rights, title and interest in and to any and all claims it has against Lincoln-DeVore, Inc., a Colorado corporation, relating to any and all work that Lincoln-DeVore, Inc. did for either the Sweetwater County Library Board of Trustees or any of its agents, members of its Board of Trustees or employees, and/or Superior Lumber Company relating to work done on the Sweetwater County Library project located in Green River, Wyoming, including but not limited to the initial soils investigation report dated June 9, 1977 and the work associated with the preparation of said report, the materials testing and construction inspection that was done by Lincoln-DeVore, Inc. during the construction of the Sweetwater County Library located in Green River, Wyoming, including the in-place density tests and all other testing and all other work done by Lincoln-DeVore that in any way relates to the planning, design, construction or operation of the Sweetwater County Library facility located in Green River, Wyoming, and any and all other associated claims that Assignor may have in any that relates to the work done by Lincoln-DeVore, Inc. pertaining to the Sweetwater County Library project in Green River, Wyoming. In addition, Assignor hereby grants to Assignee any cause or causes of action or right to litigate any and all claims that Assignor may have against Lincoln-DeVore, Inc. relating to any and all work that Lincoln-DeVore, Inc. did relating to the Sweetwater County Library project located in Green River,

LAW OFFICES
PHILLIPS, LANCASTER AND THOMAS, P. C.
822 MAIN STREET
P. O. DRAWER 770
EVANSTON, WY 82930-0077
(307) 789-9370

Wyoming, including the right of Assignee to be substituted in the full place and stead of Assignor relating to any such claim.

Assignee shall be entitled to initiate any and all actions. or causes of actions against Lincoln-DeVore, Inc. relating to any work that Lincoln-DeVore, Inc. did on behalf of Assignor pertaining to the Sweetwater County library project in Green River, Wyoming, and shall be entitled to recover any proceeds from any actions, and shall be entitled to act in the full place and stead of Assignor pertaining to any such action.

Assignee hereby represents and warrants to Assignee that no previous assignment of its interest in the above described actions have been made, and Assignor agrees not to assign, sell, pledge or transfer any such interest. Assignor agrees to cooperate with Assignee in all actions taken in furtherance of this Assignment, and agrees that its agents and employees and its expert witnesses that have been retained pertaining to the lawsuit filed in the District Court, Third Judicial District, State of Wyoming, County of Sweetwater in the action entitled "Sweetwater County Library Board of Trustees, Plaintiff, vs. Richardson Associates, Superior Lumber Company, and E. W. Allen & Associates, Inc., Defendants, and Richardson Associates and E. W. Allen & Associates, Inc., Third-Party Plaintiffs vs. Lincoln-DeVore, Inc.," Civil Action No. C-85-614, will be made available to the Assignee to assist them in the action pertaining to this Assignment. Provided, however, Assignee shall be responsible for paying the costs of any such parties from the date of this Assignment forward.

This Assignment shall be binding upon and inure to the benefit of the assigns or successors in interest of the Assignor and Assignee. This Assignment shall be governed by and construed in accordance with the laws of the State of Wyoming.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed on the _12th_ day of _April_, 1988 pursuant to the authority of the Board of Trustees of the Sweetwater County

LAW OFFICES
PHILLIPS, LANCASTER AND THOMAS, P. C.
822 MAIN STREET
P. O. DRAWER 770
EVANSTON, WY 82930-0077
(307) 789-9370

Library Board of Trustees.

SWEETWATER COUNTY LIBRARY BOARD
OF TRUSTEES

By: _Opal Torres_ _____
Chairman

Attest:

_Helen E. Higby_
Secretary

STATE OF WYOMING    )
                    )ss.
COUNTY OF SWEETWATER )

On this _12th_ day of _April_____, 1988, before me personally appeared _Opal Torres_____ and _Helen E. Higby_____, to me personally known, who, being by me duly sworn, did say that they are the Chairman and Secretary respectively of Sweetwater County Library Board of Trustees, and that the seal affixed to said instrument is the corporate seal of said corporation and that said instrument was signed and sealed in behalf of said corporation by authority of its Board of Directors, and said Chairman and Secretary acknowledged said instrument to be the free act and deed of said corporation.

WITNESS my hand and official seal.

_Michaela Karmos_____
Notary Public
_My Commission expires Nov. 25, 1989_

LAW OFFICES
PHILLIPS, LANCASTER AND THOMAS, P. C.
822 MAIN STREET, SUITE C
P. O. DRAWER 770
EVANSTON, WY 82930-0077
(307) 789-9370

SWEETWATER ASSIGNMENT (DWL20)                    PAGE 3    1001

806 P.2d—19

## EXHIBIT C
### COVENANT NOT TO SUE BETWEEN SWEETWATER COUNTY LIBRARY BOARD OF TRUSTEES, RICHARDSON ASSOCIATES, SUPERIOR LUMBER COMPANY AND E. W. ALLEN & ASSOCIATES, INC.

For and in consideration of the payment of the sum of Three Hundred Fifty Thousand Dollars ($350,000.00), the Sweetwater County Library Board of Trustees, as the duly elected and appointed Board to administer the affairs of the Sweetwater County Library located in Green River, Wyoming, and said Board being duly authorized does hereby covenant not to sue all of the following individuals and entities: Keith Richardson, William A. Richardson, Neal P. Stowe, Edmund W. Allen, Leon W. Tanner, Eric Kankainen, their heirs, executors, assigns and insurers; and Design Professional Insurance Companies, Richardson Associates, Superior Lumber Company, E. W. Allen & Associates, Inc., and all other affiliates, parent companies and subsidiaries, and their officers, directors, agents, employees and insurers,( hereinafter sometimes referred to as "Covenantees). This Covenant Not to Sue is intended to relate to all of the preceding individuals and entities from any and all actions, claims, demands, damages, costs, loss of services, expenses, and compensation of any kind or nature on account of in any way growing out of the planning, design, construction, operation, or any other matter or thing pertaining to the Sweetwater County Library located in Green River, Wyoming, as a result of which the Sweetwater County Library Board of Trustees filed Civil Action No. C-85-614 in the District Court for the Third Judicial District, Sweetwater County, Wyoming, captioned "Sweetwater County Library Board of Trustees, Plaintiff, vs. Richardson Associates; Superior Lumber Company; and E. W. Allen & Associates, Inc., Defendants." This Covenant Not to Sue includes, but is in no way limited to, any and all known and unknown injuries or damages, resulting or to result or which may in the future result from the planning, design, construction and operation of the Sweetwater County Library or building site located in Green River, Wyoming. It is also intended to include, but in no way be limited to, claims that the Sweetwater County Library Board of Trustees or anyone

LAW OFFICES
PHILLIPS, LANCASTER AND THOMAS, P. C.
822 MAIN STREET
P. O. DRAWER 770
EVANSTON, WY 82930-0077
(307) 789-9370

else has or may have in the future for contribution and indemnity against the above enumerated parties.

Sweetwater County Library Board of Trustees does hereby declare and represent and does acknowledge and agree that it shall timely pay and satisfy, or otherwise discharge, and shall hold the person and entities released hereby, free and harmless of, from and against any and all subrogation or other claims which result of or arise out of the above described planning, design, construction and operation of the Sweetwater County Library or building site in Green River, Wyoming, or out of any damage or injury incurred or to be incurred as a result thereof.

It is further understood and agreed that this settlement is a compromise of a doubtful and disputed claim, and that the payment is not to be construed as an admission of liability on the part of those parties listed herein, by whom liability is expressly denied.

The undersigned represents and acknowledges that it has been represented by legal counsel at the time of signing of this Covenant Not to Sue, and that the undersigned is duly authorized to execute this Covenant Not to Sue and agrees that it will not sue or pursue any legal action or make any claims of whatever nature against the parties listed herein which in any way relate to the planning, design, construction or operation, or in any other way related to the Sweetwater County Library or building site located in Green River, Wyoming.

This Covenant Not to Sue contains the entire agreement between the parties hereto, and the terms of this Covenant Not to Sue are contractural and not merely recital.

The Sweetwater County Library Board of Trustees, does hereby further state that it has carefully read the foregoing Covenant Not to Sue and know the contents thereof, and that the same is signed as its own free act after due and proper representation and under due authority to execute the same.

It is further expressly understood that this Covenant Not to Sue only relates to the above enumerated "Covenantees" and does not relate to any claim that the Sweetwater County Library

LAW OFFICES
PHILLIPS, LANCASTER AND THOMAS, P. C.
622 MAIN STREET
P. O. DRAWER 770
EVANSTON, WY 82930-0077
(307) 789-9370

RELEASE (sweetwater/richardson 3-DWL20)     PAGE 2

Board of Trustees may have against Lincoln-DeVore, Inc., a Colorado corporation, who was retained to prepare a soils investigation report and also retained to do certain construction inspection and testing relating to the Sweetwater County Library or building site located in Green River, Wyoming, or any other party except the "Covenantees" enumerated herein who did work on the Sweetwater County Library or building site in Green River, Wyoming, and any such claims are hereby expressly reserved and retained.

Sweetwater County Library Board of Trustees, Richardson Association, E. W. Allen & Associates, Inc. agree that they do further preserve and retain all rights which they may have against Lincoln-DeVore, Inc., and any other party named or unnamed except the "Covenantees" enumerated herein, who did work on the Sweetwater County Library Board building or building site located in Green River, Wyoming, including all claims, action or causes of action of whatsoever nature against Lincoln-DeVore, Inc. or any other party named or unnamed except the "Covenantees" enumerated herein, who did work relating to the Library building or building site in Green River, Wyoming for breach of contract, negligence, contribution, indemnity, breach of third-party beneficiary contracts or any other cause or causes of action.

WITNESS our hands this _12th_ day of _April_, 1988.

SWEETWATER COUNTY LIBRARY BOARD OF TRUSTEES

By: _____
    Chairman

Attest:

_____
Secretary

STATE OF WYOMING    )
                    )ss.
COUNTY OF SWEETWATER )

On this _12th_ day of _April_, 1988, before me personally appeared _____ and _____, to me personally known who, being by me duly sworn, did say that they are the Chairman and Secretary respectively of Sweetwater County Library Board of Trustees, and that the seal affixed to said instrument is the corporate seal of said corporation and

PHILLIPS, LANCASTER AND THOMAS, P. C.
822 MAIN STREET
P. O. DRAWER 770
EVANSTON, WY 82930-0077
(307) 789-9370

RELEASE (sweetwater/richardson 3-DWL20)          PAGE 3

that said instrument was signed and sealed in behalf of said corporation by authority of its Board of Directors, and said Chairman and Secretary acknowledged said instrument to be the free act and deed of said corporation.

    WITNESS my hand and official seal.

_Michael Kenno_
Notary Public
My commission expires Nov 25, 1989

PHILLIPS, LANCASTER AND THOMAS, P. C.
822 MAIN STREET
P. O. DRAWER 770
EVANSTON, WY 82930-0077
(307) 789-9370

RELEASE (sweetwater/richardson 3-DWL20)        PAGE 4